THE COUNTY OF ALLEGANY, Plaintiff, *v.* THE TOWN OF WELLS-
VILLE, Defendant.

*Excise moneys — belong to towns — a resolution of the board of supervisors is not " a
special or local law."*

A board of supervisors in 1830 abolished by resolution the distinction between
county and town poor, and declared that thereafter, all should be considered
county paupers.

Under the "Town Law" (§ 181, chap. 569, Laws of 1890) excise moneys
were made subject to the control of the boards of supervisors in those counties
where the poor are a county charge.

By chapter 401 of the Laws of 1892 (the general Excise Law) the method of dis-
position of excise moneys was changed, and they are payable to the town in
which they are collected, to be used for its ordinary expenditures, "unless oth-
erwise provided by a special or local law."

Upon the submission of a controversy between a county and a town relative to
the disposition of excise moneys,

*Held,* that the resolution of the board of supervisors was not, within the meaning
of chapter 401 of the Laws of 1892, "a special or local law" entitling the
county to claim such moneys for the support of the county poor.

SUBMISSION of a controversy upon an agreed statement of facts
pursuant to section 1279 of the Code of Civil Procedure.

The facts agreed upon were in part as follows:

"That during the years 1892, 1893 and 1894, and for many years
prior thereto, the support of the poor within Allegany county has
been a county charge after the town in which such poor persons
reside has expended the sum of ten dollars for the support of such
poor persons; that is to say, that under resolution of the Board of
Supervisors of the plaintiff, passed November 13, 1830, each town was
liable in the first instance for the support of its resident poor in the
sum of ten dollars, and that after the expenditure of said ten dol-
lars by said town for the support of said resident poor person, then
such poor person became a county charge and such rule or regula-
tion is now in force in said county of Allegany.

"That during the year 1892 and after May 1st the supervisor
of the defendant received the sum of $717.50 for licenses that had
been granted by the excise commissioners of the defendant to
various persons for the sale of strong and spirituous liquors under
the excise law of the State of New York.

" That during the year 1893 the supervisor of the defendant received the sum of $700 for licenses that had been granted by the excise commissioners of the defendant to various persons for the sale of strong and spirituous liquors.

" That during the year 1894 the supervisor of the defendant received the sum of $710 for licenses that had been granted by the excise commissioners of the defendant to various persons for the sale of strong and spirituous liquors.

" That at the regular adjourned session and meeting of the board of supervisors of said Allegany county, held December 13, 1892, the Allegany county treasurer reported to said board that the towns of Grove, Hume, Andover and Willing had, after the passage of chapter 401, Laws of 1892, the Excise Act of 1892, paid to him as such treasurer, excise moneys amounting to the sum of $575.28, reported by him to said board as belonging to said towns, and upon the coming in of said report before said board and upon said 13th day of December, 1892, the said board by resolution directed that orders be drawn payable from the contingent fund of said county to the supervisors of the said towns, to which such moneys belong, and they were thereafter so drawn and paid said towns."

*Charles H. Brown*, for the plaintiff.

*Clarence A. Farnum*, for the defendant.

LEWIS, J. :

Both parties claim to be entitled to the money in question. The defendant concedes that but for the passage of chapter 401 of the Laws of 1892, entitled "An act to revise and consolidate the laws regulating the sale of intoxicating liquors," the plaintiff would be entitled to the funds in question.

It is the contention of defendant's counsel that the law as it had theretofore existed was so changed by the act of 1892 that his client is entitled to the fund.

Power was given to the various boards of supervisors of the State by chapter 155 of the Laws of 1828 to abolish by resolution all distinction between the county and town poor in their counties respectively and to have the expense of maintaining them, made a county charge. Such determination, duly certified by the clerk of the board, was required to be filed with the county clerk.

Pursuant to the power thus conferred, plaintiff's supervisors in the year 1830 passed the following resolution : " Resolved, to abolish all distinction between county and town poor, and that from this time forward they may be considered county paupers."

This resolution was properly certified and filed as required by law.

Chapter 569 of the Laws of 1890, known as the "Town Law," was in force at the time of the passage of the act of 1892.

Section 181 of the former act reads as follows : " Excise moneys, how disposed of.— All excise moneys shall be disposed of as directed by the town board of the town in which such moneys are paid, except in those counties where the support of the poor is a county charge, in which case such moneys shall be paid into the county treasury, subject to the control of the board of supervisors."

A similar provision was contained in chapter 444 of the Laws of 1874. By section 15 of the act of 1892 it was provided that " every board of excise and every commissioner of excise of a town shall within ten days after the receipt of any money by such board or commissioner pay such money or cause it to be paid to the supervisor of such town. Such moneys shall be applied to the payment of the ordinary expenditures payable from the general fund of the city or town respectively, unless otherwise provided by a special or local law."

It is conceded by the plaintiff's counsel that were it not for the concluding clause of this section, to wit, " unless otherwise provided by a special or local law," the town would be entitled to retain these moneys.

It is his contention that the resolution of the board of supervisors heretofore referred to answers the description of a special or local law within the meaning of said act.

We assume that the promoters of the act of 1892 had in mind to effect thereby some change in the law as it had theretofore existed. They provided that thereafter all excise moneys should go to the town authorities unless otherwise provided by a special or local law. It is altogether improbable that the Legislature when using such explicit language had in mind to provide that the disposition to be made of such moneys was to depend upon the action of boards of supervisors, for, as we have seen, prior to the passage of that act, whether the excise moneys went to the town or county depended

upon the action of the supervisors of the county.  If they took no action the town was entitled to the money.

If a resolution of the board answers the description of a special or local law within the meaning of the act (Laws of 1892, chap. 401), then no practical change in the law as it had theretofore existed was effected, for the power to determine where the moneys should go was still left with the supervisors.

It was provided by section 5 of chapter 628 of the Laws of 1857 that all excise moneys should be paid to the county treasurer for the use of the poor of the county.  This was a general law affecting the whole State.

After the passage of this act, local and special laws were from time to time passed exempting different counties from the effect of this act of 1857, and making special provisions for the disposition of excise moneys of the various localities.  These acts were upon the statute books unrepealed at the time of the passage of the act of 1892.

It was such acts, we think, that the lawmakers had in mind, the special and local bills provided for by sections 16 and 18 of article 3 of the Constitution, and not mere resolutions of boards of supervisors.

Section 1 of the act of 1892 repealed all special and local laws in conflict with its provisions, and were it not for the concluding words of section 15, " unless otherwise provided by a special or local law," there would be no room for doubt.

The towns of our State provide the machinery and pay the expenses of the collection of excise moneys, and there is a propriety in their having the direct benefit of the moneys arising from granting licenses.

The act of 1892, as will be seen by an examination of its provisions, bears evidence that its promoters were not unfriendly to the traffic in intoxicating liquors.

Section 40, of said act makes a radical change in what is known as the Civil Damage Act.  Some of its (the Civil Damage Act) features, which were considered severe and harsh by those engaged in the sale of intoxicating liquors, were modified in the interest of the business.

The general policy of the legislation of the State prior to the

passage of the act of 1892, had been to devote excise moneys to the support of the poor, thereby associating the traffic in liquor with pauperism. The act of 1892 expressly requires that such moneys shall be applied to the payment of the ordinary expenditures of the city or town respectively.

The effect of giving the town the direct benefit of the moneys arising from the granting of licenses would probably be to promote the granting of licenses. If the excise money goes into the county treasury, a no-license town derives equal benefit from it with the town which grants licenses. If the money is to go directly to the town, its electors would naturally look with more favor upon the traffic than if the money is to go into the treasury of the county.

We are of the opinion that the Legislature had in mind, in passing the act of 1892, to effect a change in the law as it had theretofore existed, and provide that without regard to whether the poor are a town or county charge, the excise moneys should be paid to and belong to the town unless there was a local or special State law making a different disposition thereof.

It follows that the defendant is entitled to judgment, awarding to it the money in question.

BRADLEY and WARD, JJ., concurred.

Judgment directed for the defendant, without costs.